Filing # 98216712 E-Filed 10/31/2019 11:45:35 PM

IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT COURT IN AND
FOR PALM BEACH COUNTY, FLORIDA

**CASE NO.:  50-2019-CA-009021-XXXX-MB AF**

BRIAN LEE,

    Plaintiff,

vs.

TAMMY PIERRE, THE SCHOOL DISTRICT
OF PALM BEACH COUNTY and
THE SCHOOL BOARD OF
PALM BEACH COUNTY
d/b/a The School District of Palm Beach
County,

    Defendants.

_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

  Plaintiff BRIAN LEE sues Defendant TAMMY PIERRE,  Defendant THE SCHOOL

DISTRICT OF PALM BEACH COUNTY and Defendant THE SCHOOL BOARD OF PALM

BEACH COUNTY d/b/a The School District of Palm Beach County, and states:

## JURISDICTION AND IDENTIFICATION OF THE PARTIES

  1. This is an action for damages in excess of $15,000, the minimum jurisdictional limits

of this Court exclusive of attorney's fees and costs.

  2. At all times material hereto, Plaintiff Brian Lee ("Plaintiff") was and is a resident of

Palm Beach County, Florida, and an employee of The School District of Palm Beach County. [See

attached Exhibit A which is incorporated by reference.

  3. At all times material hereto, Defendant Tammy Pierre ("Pierre") was and is a resident

of Palm Beach County, Florida or is a non-resident and/or is concealing her whereabouts.

4. At all times material hereto, The School District of Palm Beach County ("School District") maintained an office for the transaction of its customary business in Palm Beach County, Florida, was and is an independent district that constitutes a unit for the control, organization, and administration of schools in Palm Beach County including bus transportation. Further, the School District, was and is sui juris having filed suits and obtained recorded judgments against Palm Beach County citizens who are its employees, e.g., *School District of Palm Beach County v. Jeanette Williams*, Palm Beach County Court Case # 502018CC002138XXXXMB RB [See attached Exhibits B and C which are incorporated by reference.]. The School District is vicariously liable for the acts of its agents, servants and employees complained of herein.

5. At all times material hereto Defendant The School Board of Palm Beach County (the "School Board") was and is a political subdivision of the State of Florida doing business as the School District which maintained an office for the transaction of its customary business in Palm Beach County Florida and governed, supervised and controlled the School District per Fla. Stat. § 1001.32(2), including the acts complained of herein. The School Board is vicariously liable for the acts of its agents, servants and employees and the School District complained of herein.

6. All acts complained of occurred in Palm Beach County, Florida.

## FACTS GIVING RISE TO CAUSES OF ACTION

7. At all times material hereto, the School District was Plaintiff's employer.

8. At all times material hereto, Plaintiff was a male employee of the School District in the School District's Transportation Department working from March 25, 2015 to January 8, 2019 as a school bus driver except for a period in May 2019 when he performed a desk job doing filing for the School District.

2

9. On January 8, 2019, the School District terminated the Plaintiff, effective immediately, without offering him a reasonable accommodation of another job.

10. On or about January 23, 2019, the School District presented the School Board with Plaintiff's termination for acceptance and the School Board accepted Plaintiff's termination without offering him a reasonable accommodation of another job.

11. Within 180 days of being terminated, Plaintiff timely filed charges of discrimination against the School District and the School Board with the Equal Employment Opportunity Commission (EEOC) which were cross-filed with the Florida Commission on Human Relations ("FCHR") under a work share arrangement between the two agencies.

12. Plaintiff timeely filed suit within 90 days after receiving Notices of Right to Sue the School District and the School Board mailed to him by thee EEOC. More than 180 days have passed since his charges of discrimination were cross-filed with the FCHR.

13. Plaintiff has exhausted all of his administrative remedies and all conditions precedent have occurred, been excused or waived.

14. Plaintiff has complied with all conditions precedent prior to bringing this action and/or said conditions precedent have been excused or waived.

## A. COUNT FOR INTENTIONAL BATTERY

### Count I against Pierre for Battery

15. Plaintiff sues Defendant Tammy Pierre for battery, adopts and realleges paragraphs 1-14 as if fully alleged herein and further states:

16. In September 2017, Tammy Pierre was a female who was an employee of the School District as a Senior Coordinator at the School District Transportation Department at its Royal Palm

bus compound. In her position, Tammy Pierre was a supervisor and superior of Plaintiff with control over his employment activities.

17. On or about September 22, 2017 within a one-hour period, Tammy Pierre engaged in battery of Plaintiff in the workplace at School District offices through two intentional, unwanted, unwelcome, unconsented physical contacts with Plaintiff which were intended by Pierre, and were perceived by Plaintiff, to be sexually intimate and provocative. During the first occurrence, Tammy Pierre lifted Plaintiff's shirt from Plaintiff to expose him. On the second occasion, Tammy Pierre intimately touched Plaintiff's back and his midsection on the front of his body while blocking his path to a doorway which would have enabled Plaintiff to escape Pierre's unwelcome physical contact.

18. The physical contacts by Pierre upon Plaintiff were pervasive because both occurred within a one-hour time period.

19. The aforesaid physical contacts by Pierre upon Plaintiff were sexual by their intimate nature and rose to the level of sexual harassment because Pierre's physical contact while blocking Plaintiff's ability to exit was unwelcome and unconsented by Plaintiff, intimidating to Plaintiff, made Plaintiff feel uncomfortable, interfered with his work performance and created a harassing/hostile work environment.

20. The aforesaid contact by Pierre was intended by Pierre to cause harmful or offensive contact with Plaintiff.

21. Harmful and offensive contact by Pierre upon Plaintiff resulted from the intended contact as described above. Further, the harmful and offensive contact was pervasive because it occurred within a one-hour time period, was sexual by its intimate nature and rose to the level of sexual harassment because Pierre's physical contact while blocking Plaintiff's ability to exit was

unwelcome and unconsented by Plaintiff, intimidating to Plaintiff, made Plaintiff feel uncomfortable, interfered with his work performance and created a harassing/hostile work environment.

22. The aforesaid physical contact by Pierre upon Plaintiff was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of Plaintiff's human rights.

23. As a direct and proximate result of Pierre, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress, medical expense, loss of earnings, loss of ability to earn money in the future, loss of the capacity to enjoy life, loss of employment benefits and aggravation of a pre-existing condition. The foregoing losses occurred in the past, will occur in the future and are permanent.

WHEREFORE, Plaintiff demands judgment in his favor against Defendant Tammy Pierre for compensatory damages, costs, interest, trial by jury on all issue so triable as of right by a jury and such other relief as this Court deems proper.

## B. COUNTS FOR DISCRIMINATORY FAILURE TO MAKE REASONABLE ADA AND ADAAA ACCOMMODATIONS

### COUNT II against the School District for failure to make reasonable accommodation under the ADA and ADAAA

24. Plaintiff sues the School District for disability discrimination in the workplace, adopts and realleges paragraphs 1-14 as if fully alleged herein and further states:

25. This action for intentional discriminatory failure to make reasonable accommodation is brought pursuant to the American with Disabilities Act of 1990, as amended, 41 USC § 12111, ET SEQ. ("ADA") and the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 ("ADAAA").

26. Plaintiff was a school bus driver for the District since March 25, 2015 until January 8, 2019.

27. As a school bus driver, Plaintiff was required to demonstrate sufficient dexterity to qualify as a school bus driver who can safely operate a school bus.

28. Before and after employment with the School District, Plaintiff had a long medical history of chronic gout flare-ups and exacerbations that occasionally limited his mobility and dexterity.

29. The School District knew about Plaintiff's gout flare-ups and intermittent limitations of dexterity and motion from observing his limitations, being notified of his absences from work due to gout and medical information derived from Plaintiff's worker's compensation claim on October 16, 2018.

30. In April 2018, Plaintiff took three weeks sick leave because of illness associated with an exacerbation of gout.

31. In May 2018, upon Plaintiff's return to work, the School District reasonably accommodated Plaintiff and his disability that the School District considered had arisen from his gout exacerbation. The School District assigned Plaintiff to a desk job doing filing, which he was qualified to do as an employee, at the School District's building and grounds department on Summit Boulevard in West Palm Beach, Florida until the school year ended.

32. When his gout-related symptoms abated, Plaintiff resumed driving the School District's buses in August 2018 with the School District's knowledge, permission and consent when the 2018-2019 school year began.

33. On October 16, 2018, Plaintiff made a claim to the School District for worker's compensation benefits, giving notice of injury to the School District and seeking medical care for

body pain arising from a job-related incident causing injury that occurred while he was operating his employer's bus. The complaint further notified the School District of Plaintiff's gout condition which disabled him during periods of exacerbation.

34. On October 29, 2018, the School District notified Plaintiff that it was denying his claim for worker's compensation benefits because his physician reported that Plaintiff had made maximum medical improvement and Plaintiff's complaints were substantially due to pre-existing gout.

35. On October 29, 2018, Plaintiff returned to driving buses after the School District notified Plaintiff that he had used 9.5 hours of his 10 hours sick time and "[y]our attendance at work is vital to the effective and efficient operation of our school/department, and regular attendance at work is expected.".

36. Plaintiff continued driving school buses into December 2018. On December 3, 2018, the School District notified Plaintiff by letter that it considered gout or related arthritis was disabling him as a bus driver because Plaintiff was "observed with limited movement of your legs and hands."

37. The School District scheduled Plaintiff for a December 19, 2018 dexterity test which was administered and conducted by School District employees Sue Gorby and Jodie Cummings.

38. Upon the Plaintiff's return to work on January 8, 2019 from holiday break, the School District fired Plaintiff effective immediately because the School District's Gorby and Cummings determined that Plaintiff failed the dexterity test and the School District therefore considered Plaintiff disabled and disqualified from operating a school bus. 37. Plaintiff was not offered a reasonable accommodation, which he requested, to be given a desk job doing filing like in May 2018 when Plaintiff's disability due to gout was reasonably accommodated.

39. Plaintiff's termination from employment by the School District and the School Board was an adverse employment action caused by the School District and School Board intentionally discriminating against Plaintiff by not reasonably accommodating him with another job besides driving a school bus through other jobs.

40. At all times material hereto, Plaintiff was regarded as disabled by the School District from driving as school bus due to loss of dexterity arising from gout flare-ups.

41. Plaintiff was qualified for a job as a bus driver or a desk job doing tasks such as filing.

42. Plaintiff was subjected to an adverse employment action on account of his disability or the School District's perception of his disability.

43. Plaintiff was terminated, replaced by and/or treated less favorably than non-disabled employees and employees with disabilities who were not terminated due to the disability.

44. By terminating Plaintiff effective immediately on January 8, 2019, the School District and School Board intentionally discriminated against Plaintiff due to a condition that the School District and School Board considered disabling to operate a school bus but did not disable him from performing other jobs, including working at a desk job doing filing. The School District and School Board terminated and did not offer Plaintiff a reasonable accommodation of any other type of employment, including a desk job doing filing.

45. The fact that the School District fired Plaintiff as a school bus driver on January 8, 2019 based upon its December 19, 2018 dexterity test ---without updating the testing or sending Plaintiff for examination by a certified medical examiner, registered with the National Registry of Certified Medical Examiners pursuant to 49 C.F.R. s. 391.43 -- – indicates that the School District considered the degree and severity of Plaintiff's disability for school bus driving was permanent and irreversible.

8

46. The School District intentionally failed to comply with its statutory duties to take all reasonable and necessary steps to eliminate discrimination in the workplace and to prevent it from occurring in the future.

47. Plaintiff was treated differently from and more unfavorably than other comparable individuals with whom he was similarly situated in all material respects. Linda Brown and Shirley Cedric were school bus drivers who were disabled by injury or illness but were not fired nor required to undergo testing to demonstrative their physical fitness for school bus operation.

48. The School District's actions against Plaintiff were done willfully, wantonly, maliciously, with reckless disregard for Plaintiff's disability and with the intent to do harm to Plaintiff.

49. As a direct and proximate result of the School District's willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress, medical expense, loss of earnings, loss of ability to earn money in the future, loss of the capacity to enjoy life, loss of employment benefits, back pay, front pay and aggravation of a pre-existing condition. The foregoing losses occurred in the past, will occur in the future and are permanent.

50. As a further direct and proximate result of the School District's violation of the ADA and ADAAA, as heretofore described, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore will seek leave of Court, if necessary, to amend this Complaint in that regard when the same shall be fully and finally ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to the ADA and Federal law.

WHEREFORE, Plaintiff demands in his favor against the School District for compensatory damages including back pay, front pay (or reinstatement), economic and non-economic damages, punitive damages, pre- and post judgment interest, attorneys' fees, costs, trial by jury on all issue so triable as of right by a jury and such other relief as this Court deems proper.:

## COUNT III against the School District for failure to make reasonable accommodation under Chapter 760, Florida Statutes

51. Plaintiff sues the School District for discrimination, adopts and realleges paragraphs 1-14 as if fully alleged herein and further states:

52. This action for intentional discriminatory failure to make reasonable accommodation is brought pursuant to Chapter 760, Florida Statutes.

53. Before and after employment with the School District, Plaintiff had a long medical history of chronic gout flare-ups and exacerbations that occasionally limited his mobility and dexterity.

54. Plaintiff was a school bus driver for the District since March 25, 2015 until January 8, 2019.

55. The School District knew about Plaintiff's gout flare-ups that limited his dexterity and motion from observing his motion limitations, absences from work due to gout and medical information derived from Plaintiff's worker's compensation claim on October 16, 2018.

56. As a school bus driver, Plaintiff was required to demonstrate sufficient dexterity to qualify as a school bus driver who can safely operate a school bus.

57. In April 2018, Plaintiff took three weeks sick leave because of illness associated with an exacerbation of gout.

58. In May 2018, upon Plaintiff's return to work, the School District reasonably accommodated Plaintiff and his disability that the School District considered had arisen from his gout exacerbation. The School District assigned Plaintiff to a desk job doing filing, which he was qualified to do as an employee, at the School District's building and grounds department on Summit Boulevard in West Palm Beach, Florida until the school year ended.

59. When his gout-related symptoms abated, Plaintiff resumed driving the School District's buses in August 2018 with the School District's knowledge, permission and consent when the 2018-2019 school year began.

60. On October 16, 2018, Plaintiff made a claim to the School District for worker's compensation benefits, giving notice of injury to the School District and seeking medical care for body pain arising from a job-related incident causing injury that occurred while he was operating his employer's bus. The complaint further notified the School District of Plaintiff's gout condition which disabled him during periods of exacerbation.

61. On October 29, 2018, the School District notified Plaintiff that it was denying his claim for worker's compensation benefits because his physician reported that Plaintiff had made maximum medical improvement and Plaintiff's complaints were substantially due to pre-existing gout.

62. On October 29, 2018, Plaintiff returned to driving buses after the School District notified Plaintiff that he had used 9.5 hours of his 10 hours sick time and "[y]our attendance at work is vital to the effective and efficient operation of our school/department, and regular attendance at work is expected.".

63. Plaintiff continued driving school buses into December 2018. On December 3, 2018, the School District notified Plaintiff by letter that it considered gout or related arthritis was

disabling him as a bus driver because Plaintiff was "observed with limited movement of your legs and hands." The School District scheduled Plaintiff for a December 19, 2018 dexterity test which was administered and conducted by School District employees Sue Gorby and Jodie Cummings.

64. Upon the Plaintiff's return to work on January 8, 2019 from holiday break, the School District fired Plaintiff effective immediately because the School District's Gorby and Cummings determined that Plaintiff failed the dexterity test and the School District therefore considered Plaintiff disabled and disqualified from operating a school bus. 37. Plaintiff was not offered a reasonable accommodation, which he requested, to be given a desk job doing filing like in May 2018 when Plaintiff's disability due to gout was reasonably accommodated.

65. Plaintiff's termination from employment by the School District and the School Board was an adverse employment action caused by the School District and School Board intentionally discriminating against Plaintiff by not reasonably accommodating him with another job besides driving a school bus through other jobs.

66. At all times material hereto, Plaintiff was regarded as disabled by the School District from driving as school bus due to loss of dexterity arising from gout flare-ups.

67. Plaintiff was qualified for a job as a bus driver or a desk job doing such tasks as filing.

68. Plaintiff was subjected to an adverse employment action on account of his disability or the School District's perception of his disability.

69. Plaintiff was terminated, replaced by and/or treated less favorably than non-disabled employees and employees with disabilities who were not terminated due to the disability.

70. By terminating Plaintiff effective immediately on January 8, 2019, the School District and School Board intentionally discriminated against Plaintiff due to a condition that the School District and School Board considered disabling to operate a school bus but did not disable him

12

from performing other jobs, including working at a desk job doing filing. The School District and School Board terminated and did not offer Plaintiff a reasonable accommodation of any other type of employment, including a desk job doing filing.

71. The fact that the School District fired Plaintiff as a school bus driver on January 8, 2019 based upon its December 19, 2018 dexterity test ---without updating the testing or sending Plaintiff for examination by a certified medical examiner, registered with the National Registry of Certified Medical Examiners pursuant to 49 C.F.R. s. 391.43 -- – indicates that the School District considered the degree and severity of Plaintiff's disability for school bus driving was permanent and irreversible.

72. The School District intentionally failed to comply with its statutory duties to take all reasonable and necessary steps to eliminate discrimination in the workplace and to prevent it from occurring in the future.

73. Plaintiff was treated differently from and more unfavorably than other comparable individuals with whom he was similarly situated in all material respects. Linda Brown and Shirley Cedric were school bus drivers who were disabled by injury or illness but were not fired nor required to undergo testing to demonstrative their physical fitness for school bus operation.

74. The School District's actions against Plaintiff were done willfully, wantonly, maliciously, with reckless disregard for Plaintiff's disability and with the intent to do harm to Plaintiff.

75. Plaintiff filed a charge of discrimination with the EEOC and FCHR and against the School District on April 15, 2019. The EEOC mailed issued a Notice of Right to Sue. More than 180 days have passed without action since the FCHR received Plaintiff's Notice. Plaintiff has exhausted his administrative remedies.

76.  As a direct and proximate result of the School District's willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress, medical expense, loss of earnings, loss of ability to earn money in the future, loss of the capacity to enjoy life, loss of employment benefits, back pay, front pay and aggravation of a pre-existing condition. The foregoing losses occurred in the past, will occur in the future and are permanent.

77. As a further direct and proximate result of the School District's violation of the ADA and ADAAA, as heretofore described, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore will seek leave of Court, if necessary, to amend this Complaint in that regard when the same shall be fully and finally ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to the ADA and Federal law.

WHEREFORE, Plaintiff demands in his favor against the School District for compensatory damages including back pay, front pay (or reinstatement), economic and non-economic damages, punitive damages, pre- and post judgment interest, attorneys' fees, costs, trial by jury on all issue so triable as of right by a jury and such other relief as this Court deems proper.

### COUNT IV against the School Board for failure to make reasonable accommodation under the ADA and ADAAA

78. Plaintiff sues the School Board for disability discrimination in the workplace, adopts and realleges paragraphs 1-14 as if fully alleged herein and further states:

79. This action for intentional discriminatory failure to make reasonable accommodation is brought pursuant to the American with Disabilities Act of 1990, as amended, 41 USC § 12111,

ET SEQ. ("ADA") and the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 ("ADAAA").

80. Plaintiff was a school bus driver for the School District since March 25, 2015 until January 8, 2019.

81. As a school bus driver, Plaintiff was required to demonstrate sufficient dexterity to qualify as a school bus driver who can safely operate a school bus.

82. Before and after employment with the School District, Plaintiff had a long medical history of chronic gout flare-ups and exacerbations that occasionally limited his mobility and dexterity.

83. The School District and School Board knew about Plaintiff's gout flare-ups and intermittent limitations of dexterity and motion from observing his limitations, being notified of his absences from work due to gout and medical information derived from Plaintiff's worker's compensation claim on October 16, 2018.

84. In April 2018, Plaintiff took three weeks sick leave because of illness associated with an exacerbation of gout.

85. In May 2018, upon Plaintiff's return to work, the School District reasonably accommodated Plaintiff and his disability that the School District considered had arisen from his gout exacerbation. The School District assigned Plaintiff to a desk job doing filing, which he was qualified to do as an employee, at the School District's building and grounds department on Summit Boulevard in West Palm Beach, Florida until the school year ended.

86. When his gout-related symptoms abated, Plaintiff resumed driving the School District's buses in August 2018 with the School District's knowledge, permission and consent when the 2018-2019 school year began.

87. On October 16, 2018, Plaintiff made a claim to the School District for worker's compensation benefits, giving notice of injury to the School District and seeking medical care for body pain arising from a job-related incident causing injury that occurred while he was operating his employer's bus. The complaint further notified the School District of Plaintiff's gout condition which disabled him during periods of exacerbation.

88. On October 29, 2018, the School District notified Plaintiff that it was denying his claim for worker's compensation benefits because his physician reported that Plaintiff had made maximum medical improvement and Plaintiff's complaints were substantially due to pre-existing gout.

89. On October 29, 2018, Plaintiff returned to driving buses after the School District notified Plaintiff that he had used 9.5 hours of his 10 hours sick time and "[y]our attendance at work is vital to the effective and efficient operation of our school/department, and regular attendance at work is expected."

90. Plaintiff continued driving school buses into December 2018. On December 3, 2018, the School District notified Plaintiff by letter that it considered gout or related arthritis was disabling him as a bus driver because Plaintiff was "observed with limited movement of your legs and hands." The School District scheduled Plaintiff for a December 19, 2018 dexterity test which was administered and conducted by School District employees Sue Gorby and Jodie Cummings.

91. Upon the Plaintiff's return to work on January 8, 2019 from holiday break, the School District fired Plaintiff effective immediately because the School District's Gorby and Cummings determined that Plaintiff failed the dexterity test and the School District therefore considered Plaintiff disabled and disqualified from operating a school bus. 37. Plaintiff was not offered a

reasonable accommodation, which he requested, to be given a desk job doing filing like in May 2018 when Plaintiff's disability due to gout was reasonably accommodated.

92. Plaintiff's termination from employment by the School District and the School Board was an adverse employment action caused by the School And School Board and School Board intentionally discriminating against Plaintiff by not reasonably accommodating him with another job besides driving a school bus though other jobs.

93. At all times material hereto, Plaintiff was regarded as disabled by the School And School Board from driving as school bus due to loss of dexterity arising from gout flare-ups.

94. Plaintiff was qualified for a job as a bus driver or a desk job doing tasks such as filing.

95. Plaintiff was subjected to an adverse employment action on account of his disability or the School and School Board's perception of his disability.

96. Plaintiff was terminated, replaced by and/or treated less favorably than non-disabled employees and employees with disabilities who were not terminated due to the disability.

97. By terminating Plaintiff effective immediately on January 8, 2019, the School District and School Board intentionally discriminated against Plaintiff due to a condition that the School District and School Board considered disabling to operate a school bus but did not disable him from performing other jobs, including working at a desk job doing filing. The School District and School Board terminated and did not offer Plaintiff a reasonable accommodation of any other type of employment, including a desk job doing filing.

98. The fact that the School District and School Board fired Plaintiff as a school bus driver on January 8, 2019 based upon its December 19, 2018 dexterity test ---without updating the testing or sending Plaintiff for examination by a certified medical examiner, registered with the National Registry of Certified Medical Examiners pursuant to 49 C.F.R. s. 391.43 -- – indicates that the

School And School Board considered the degree and severity of Plaintiff's disability for school bus driving was permanent and irreversible.

99. The School District and School Board intentionally failed to comply with its statutory duties to take all reasonable and necessary steps to eliminate discrimination in the workplace and to prevent it from occurring in the future.

100. Plaintiff was treated differently from and more unfavorably than other comparable individuals with whom he was similarly situated in all material respects. Linda Brown and Shirley Cedric were school bus drivers who were disabled by injury or illness but were not fired nor required to undergo testing to demonstrative their physical fitness for school bus operation.

101. The School District and School Board's actions against Plaintiff were done willfully, wantonly, maliciously, with reckless disregard for Plaintiff's disability and with the intent to do harm to Plaintiff.

102. As a direct and proximate result of the School Board's willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress, medical expense, loss of earnings, loss of ability to earn money in the future, loss of the capacity to enjoy life, loss of employment benefits, back pay, front pay and aggravation of a pre-existing condition. The foregoing losses occurred in the past, will occur in the future and are permanent.

103. As a further direct and proximate result of the School Board's violation of the ADA and ADAAA, as heretofore described, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore will seek leave of Court, if necessary, to amend this Complaint in that regard when the same shall be fully and finally

ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to the ADA and Federal law.

WHEREFORE, Plaintiff demands in his favor against the School Board for compensatory damages including back pay, front pay (or reinstatement), economic and non-economic damages,  punitive damages, pre- and post judgment interest, attorneys' fees, costs, trial by jury on all issue so triable as of right by a jury and such other relief as this Court deems proper.:

## COUNT V against the School Board for failure to make reasonable accommodation under Chapter 760, Florida Statutes

104. Plaintiff sues the School Board for discrimination, adopts and realleges paragraphs 1-14 as if fully alleged herein and further states:

105. This action for intentional discriminatory failure to make reasonable accommodation is brought pursuant to Chapter 760, Florida Statutes.

106. Before and after employment with the School District, Plaintiff had a long medical history of chronic gout flare-ups and exacerbations that occasionally limited his mobility and dexterity.

107. Plaintiff was a school bus driver for the School District since March 25, 2015 until January 8, 2019.

108. The School District and School Board knew about Plaintiff's gout flare-ups that limited his dexterity and motion from observing his motion limitations, absences from work due to gout and medical information derived from Plaintiff's worker's compensation claim on October 16, 2018.

109. As a school bus driver, Plaintiff was required to demonstrate sufficient dexterity to qualify as a school bus driver who can safely operate a school bus.

110. In April 2018, Plaintiff took three weeks sick leave because of illness associated with an exacerbation of gout.

111. In May 2018, upon Plaintiff's return to work, the School District reasonably accommodated Plaintiff and his disability that the School District considered had arisen from his gout exacerbation. The School District assigned Plaintiff to a desk job doing filing, which he was qualified to do as an employee, at the School District's building and grounds department on Summit Boulevard in West Palm Beach, Florida until the school year ended.

112. When his gout-related symptoms abated, Plaintiff resumed driving the School District's buses in August 2018 with the School District's knowledge, permission and consent when the 2018-2019 school year began.

113. On October 16, 2018, Plaintiff made a claim to the School District for worker's compensation benefits, giving notice of injury to the School District and seeking medical care for body pain arising from a job-related incident causing injury that occurred while he was operating his employer's bus. The complaint further notified the School District of Plaintiff's gout condition which disabled him during periods of exacerbation.

114. On October 29, 2018, the School District notified Plaintiff that it was denying his claim for worker's compensation benefits because his physician reported that Plaintiff had made maximum medical improvement and Plaintiff's complaints were substantially due to pre-existing gout.

115. On October 29, 2018, Plaintiff returned to driving buses after the School District notified Plaintiff that he had used 9.5 hours of his 10 hours sick time and "[y]our attendance at work is vital to the effective and efficient operation of our school/department, and regular attendance at work is expected.".

116. Plaintiff continued driving school buses into December 2018. On December 3, 2018, the School District notified Plaintiff by letter that it considered gout or related arthritis was disabling him as a bus driver because Plaintiff was "observed with limited movement of your legs and hands." The School District scheduled Plaintiff for a December 19, 2018 dexterity test which was administered and conducted by School District employees Sue Gorby and Jodie Cummings.

117. Upon the Plaintiff's return to work on January 8, 2019 from holiday break, the School District and School board fired Plaintiff effective immediately because the School District's Gorby and Cummings determined that Plaintiff failed the dexterity test and the School District and School Board therefore considered Plaintiff disabled and disqualified from operating a school bus. 37. Plaintiff was not offered a reasonable accommodation, which he requested, to be given a desk job doing filing like in May 2018 when Plaintiff's disability due to gout was reasonably accommodated.

118. Plaintiff's termination from employment by the School District and the School Board was an adverse employment action caused by the School District and School Board intentionally discriminating against Plaintiff by not reasonably accommodating him with another job besides driving a school bus through other jobs.

119. At all times material hereto, Plaintiff was regarded as disabled by the School District and School Board from driving as school bus due to loss of dexterity arising from gout flare-ups.

120. Plaintiff was qualified for a job as a bus driver or a desk job doing such tasks as filing.

121. Plaintiff was subjected to an adverse employment action on account of his disability or the School District's perception of his disability.

122. Plaintiff was terminated, replaced by and/or treated less favorably than non-disabled employees and employees with disabilities who were not terminated due to the disability.

123. By terminating Plaintiff effective immediately on January 8, 2019, the School District and School Board intentionally discriminated against Plaintiff due to a condition that the School District and School Board considered disabling to operate a school bus but did not disable him from performing other jobs, including working at a desk job doing filing. The School District and School Board terminated and did not offer Plaintiff a reasonable accommodation of any other type of employment, including a desk job doing filing.

124. The fact that the School District fired Plaintiff as a school bus driver on January 8, 2019 based upon its December 19, 2018 dexterity test ---without updating the testing or sending Plaintiff for examination by a certified medical examiner, registered with the National Registry of Certified Medical Examiners pursuant to 49 C.F.R. s. 391.43 -- – indicates that the School District and School Board considered the degree and severity of Plaintiff's disability for school bus driving was permanent and irreversible.

125. The School District and School Board intentionally failed to comply with its statutory duties to take all reasonable and necessary steps to eliminate discrimination in the workplace and to prevent it from occurring in the future.

126. Plaintiff was treated differently from and more unfavorably than other comparable individuals with whom he was similarly situated in all material respects. Linda Brown and Shirley Cedric were school bus drivers who were disabled by injury or illness but were not fired nor required to undergo testing to demonstrative their physical fitness for school bus operation.

127. The School District and School Board's actions against Plaintiff were done willfully, wantonly, maliciously, with reckless disregard for Plaintiff's disability and with the intent to do harm to Plaintiff.

128.  As a direct and proximate result of the School Board's willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress, medical expense, loss of earnings, loss of ability to earn money in the future, loss of the capacity to enjoy life, loss of employment benefits, back pay, front pay and aggravation of a pre-existing condition. The foregoing losses occurred in the past, will occur in the future and are permanent.

129. As a further direct and proximate result of the School Board's violation of the ADA and ADAAA, as heretofore described, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore will seek leave of Court, if necessary, to amend this Complaint in that regard when the same shall be fully and finally ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to the ADA and Federal law.

WHEREFORE, Plaintiff demands in his favor against the School Board for compensatory damages including back pay, front pay (or reinstatement), economic and non-economic damages, punitive damages, pre- and post judgment interest, attorneys' fees, costs, trial by jury on all issue so triable as of right by a jury and such other relief as this Court deems proper.

## C. COUNTS FOR RETALIATION UNDER TITLE VII IN THE ALTERNATIVE TO COUNTS II-V

## FACTS COMMON TO COUNTS VI-IX FOR RETALIATION UNDER TITLE VII

130. In September 2017, Gary Mosely was a male who was an employee of the School District as an Area Team Leader at the School District's Royal Palm bus compound. In his position,

Gary Mosely was a supervisor and superior of Plaintiff and Tammy Pierre with control over their job duties.

131. On or about September 22, 2017 within a one-hour period, Tammy Pierre engaged in sexual harassment of Plaintiff in the workplace at School District offices through two unwanted, unwelcome, unconsented physical contacts with Plaintiff which were intended by Pierre, and were perceived by Plaintiff, to be sexually intimate and provocative. During the first occurrence, Tammy Pierre lifted Plaintiff's shirt from Plaintiff to expose him. On the second occasion, Tammy Pierre intimately touched Plaintiff's back and his midsection on the front of his body while blocking his path to a doorway which would have enabled Plaintiff to escape Pierre's unwelcome physical contact.

132. The physical contact by Pierre upon Plaintiff was pervasive because it occurred within a one-hour time period.

133. The aforesaid physical contact by Pierre upon Plaintiff was sexual by its intimate nature and rose to the level of sexual harassment because Pierre's physical contact while blocking Plaintiff's ability to exit was unwelcome and unconsented by Plaintiff, intimidating to Plaintiff, made Plaintiff feel uncomfortable, interfered with his work performance and created a harassing/hostile work environment.

134. The aforesaid physical contact by Pierre upon Plaintiff was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of Plaintiff's human rights in the work place or any other location.

135. On or about September 25, 2017, Plaintiff complained to and notified Mosely and Cynthia Holloman, another supervisor School District employee and Senior Coordinator, about Pierre's sexual harassment and unwanted touching. Plaintiff handed his written complaint to

Holloman who gave Plaintiff's written complaint to Mosley. However, Mosley disregarded Plaintiff's rights and well-being by refusing to report the incident to the School District's Human Relations Department.

136. After September 25, 2017 through mid-December 2017, Pierre and Mosley launched and/or instigated a series of complaints about Plaintiff's job performance in retaliation for Plaintiff making a sexual harassment complaint against Pierre.

137. In mid-December 2017, Pierre and Mosley retaliated against Plaintiff for making the sexual harassment complaint against Pierre through an adverse employment action by having Plaintiff transferred and/or transferring Plaintiff from the School District's Royal Palm bus compound to the School District's bus compound in Belle Glade, Florida, causing him to have to drive 106 round-trip miles to work daily rather than 34 round-trip miles to work.

138. On or about January 8, 2018, Plaintiff notified the School District of his claim for the retaliatory misconduct of Pierre and Mosley through the adverse employment action in transferring and/or causing Plaintiff to be transferred to the School District's Belle Glade work location due to Plaintiff's sexual harassment complaint against Mosley.

139. Subsequent to Plaintiff's January 8, 2018 retaliation complaint, the School District transferred Plaintiff back to the Royal Palm bus compound on February 6, 2018 and investigated Plaintiff's complaint against Pierre and Mosley who were transferred away from the Royal Palm compound.

140. Plaintiff missed three weeks of work in April 2018 due to a flare-up of his long-standing gout condition. When Plaintiff returned to work in May 2018, the School District reasonably accommodated the disability caused by his gout flare-up by assigning him to a desk

job doing filing to the end of the school year at the School District's building and grounds department on Summit Blvd., in West Palm Beach, Florida.

141 Plaintiff resumed driving the School District's buses from the School District's Royal Palm bus compound when the 2018-2019 school year began in August 2018.

142. On October 16, 2018, the School District determined that retaliation misconduct by Mosley toward Plaintiff warranted discipline and disciplined Mosley with a verbal reprimand with written notation. On October 16, 2018, the School District determined sexual harassment misconduct by Pierre toward Plaintiff warranted discipline and disciplined Pierre with a verbal reprimand with written notation.

143. On October 16, 2018, Plaintiff made a claim to the School District for worker's compensation benefits, giving notice of injury to the School District and seeking medical care for body pain arising from a job-related incident causing injury that occurred while he was operating his employer's bus. The complaint notified the School District of Plaintiff's gout condition which disabled him during periods of exacerbation.

144. The following complaints by Plaintiff to the School District were protected activity under Title VII and the Florida Civil Rights Act: (a) against Pierre to the School District for workplace sexual harassment; and (b) against Pierre and Mosley to the School District for their workplace retaliation for Plaintiff making a sexual harassment complaint about Pierre was a protected activity.

145. Despite Plaintiff's complaints about Pierre and Mosley being a protected activity, the School District retaliated against Plaintiff for making the complaints against Pierre and Mosley by notifying Plaintiff on October 29, 2018 that it was denying Plaintiff's claim for worker's

compensation benefits without sending him to a worker's compensation physician for examination.

146. On October 29, 2018, the School District notified Plaintiff that he had used 9.5 hours of his 10 hours sick time and "[y]our attendance at work is vital to the effective and efficient operation of our school/department, and regular attendance at work is expected." Plaintiff returned to driving school buses at the Royal Palm bus compound.

147. Despite Plaintiff's complaints about Pierre and Mosley being a protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff on or about November 12, 2018 by transferring the disciplined Mosley back to the Royal Palm compound where Plaintiff was assigned. Upon Mosley's arrival, Plaintiff suffered adverse employment actions because the School District notified him that he was transferred from the Royal Palm compound, then told to disregard the transfer and that he would remain at the Royal Palm compound. But Mosley told Plaintiff that he would not be driving any school buses and to "stand down." Rather than being assigned another job, Plaintiff reported to work each day with no job assigned to him – another adverse employment action.

148. Despite the Plaintiff's complaints about Pierre and Mosley being protected activity, the Plaintiff suffered an adverse employment action and intentional discriminatory retaliation when the School District notified Plaintiff by letter on December 13, 2018 that he was "observed with limited movement of your legs and hands." Unlike May 2018 when Plaintiff's gout flare-up was accommodated with a desk filing job, Plaintiff was notified by School District Transportation Director Shane Searchwell to complete a dexterity test administered by School District employees and DOT [Department of Transportation] Medical Exam by the District's physician before he may resume driving.

149. Despite the Plaintiff's complaints about Pierre and Mosley being protected activity, the School District and Searchwell intentionally and discriminatorily retaliated against Plaintiff by directing him to contact his physician to be evaluated to determine his ability to perform the essential functions of his bus driver job, furnishing Plaintiff with a copy of his job description, a DOT Medical Examination Report and Dexterity Test for School Bus Drivers that his doctor must utilize when evaluating his bus driving abilities.

150. At all times material hereto, Searchwell and the School District's requests were further intentional discriminatory retaliation for Plaintiff's complaints against Pierre and Mosley because the requests were impossible for Plaintiff to fulfill. The School District and Searchwell knew or should have known that none of Plaintiff's physicians were certified medical examiners, registered with the National Registry of Certified Medical Examiners, pursuant to 49 C.F.R. s. 391.43 to qualify them to fill out the DOT Medical Form. Plus, Searchwell and the District had no intent to send Plaintiff to a DOT Medical Exam by the District's physician before firing him.

151. On December 19, 2018, Plaintiff underwent a dexterity examination performed by School District employees Sue Gorby and Jodie Cummings, neither of whom were physicians. Despite the Plaintiff's complaints about Pierre and Mosley being protected activity, the School District, by and through Gorby and Cummings, conducted the test in such manner so that the results were that Plaintiff failed.

152. Despite the Plaintiff's complaints about Pierre and Mosley being protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff by firing him on January 8, 2019, effective immediately and without warning, solely for failing the dexterity test without sending the dexterity report results to Plaintiff's physicians or sending Plaintiff to a DOT Medical Exam by the District's physician as represented on December 3, 2018 to determine if

28

Plaintiff could resume driving a school bus and without reasonable accommodation to another job as the School District did in May 2018.

## Count VI against the School District
## Retaliation under Title VII in the alternative to Counts II-V

153. Plaintiff sues the School District for retaliation under Title VII, adopts and realleges paragraphs 1-14 and 130-152 as if fully alleged herein and further states:

153. This action for retaliation is brought pursuant to Title VII, Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e–3(a).

154. At all times material hereto, the factual allegations in paragraphs 118-140 are incorporated, adopted and re-alleged as set forth herein because they are relevant and material to this count.

155. Plaintiff has filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the School District within 180 days of his January 8, 2019 termination. The EEOC mailed a Notice of Right to Sue on or after April 15, 2019 which Plaintiff received on or after April 17, 2019. Plaintiff has exhausted his administrative remedies.

156. At all times material hereto, Plaintiff was engaged in a protected activity under Title VII when he made complaints to the School District against Pierre for workplace sexual harassment and for workplace retaliation by Mosley and Pierre for making the sexual harassment complaint against Pierre.

157. At all times hereto, Plaintiff's aforesaid complaints against Pierre and Mosley were substantiated as the School District disciplined Mosley and Pierre for the protected activity complained of by Plaintiff and removed them from the Royal Palm compound where Plaintiff worked so that they would not be his supervisors.

158. Despite Plaintiff's aforesaid protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff on or about November 12, 2018 by returning Mosley to the Royal Palm compound where Plaintiff worked to be Plaintiff's supervisor.

159. Mosley's return to the Royal Palm compound was temporally proximate to cause and did cause the rest of the School District's intentionally discriminatory misconduct in violation of Title VII. Despite Plaintiff's aforesaid protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff by and through Mosley who removed Plaintiff from bus driving duties and assigned him to report to work every day to do nothing which is an adverse employment action.

160. Despite Plaintiff's aforesaid protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff on or about December 3, 2018 through pre-textual requirements for Plaintiff to (a) undergo a dexterity test conducted by School District employees that Plaintiff was pre-destined to fail; (b) undergo job-qualifying medical examinations by Plaintiff's own physicians whom the School District knew or should have known were not qualified to fill out the DOT medical forms furnished by the School District; (c) the School District withholding the dexterity test results from Plaintiff's physicians so that they could complete their job-qualifying examinations of Plaintiff; and (d) promising but not sending Plaintiff to a promised DOT Medical Exam by the District's physician before firing Plaintiff.

161. Despite Plaintiff's aforesaid protected activity, Plaintiff suffered an adverse employment action and intentional discriminatory retaliation on January 8, 2019 when the School District fired Plaintiff, effective immediately, (a) without warning; (b) after Mosley and Pierre were disciplined due to Plaintiff's complaint; (c) without sending the dexterity test results to Plaintiff's doctors to complete their evaluations of his driving ability; (d) without sending Plaintiff

to a promised a DOT Medical Exam by the District's physician; and (e) without reasonably accommodating Plaintiff with a desk job doing filing as the School District did in May 2018.

162. At all times material hereto, Plaintiff was qualified to perform a desk job doing filing.

163. At all times material hereto, the School District reasonably accommodated qualified similarly-situated persons Linda Brown and Shirly Cedric, as well as Plaintiff in May 2018, considered by the District disabled by illness injury rather than through termination.

164. At all times material hereto, there was a causal connection and temporal proximity between the protected activity of Plaintiff's substantiated complaints about Pierre's workplace sexual harassment, Pierre/Mosley's workplace retaliation and the resultant retaliation that caused Plaintiff's termination, to wit:

a. Mosley and Pierre were disciplined in mid-October 2018.

b. The School District returned Mosley to the Royal Palm compound to be Plaintiff's supervisor in mid-November 2018.

c. Plaintiff's reassignment to another compound was rescinded by the School District and Plaintiff was forced to remain at the Royal Palm compounded under Mosley who immediately removed Plaintiff from bus driving and assigned him to do nothing.

d. On December 3, 2018, the School District observes Plaintiff, who is doing nothing at the Royal Palm compound, to have "limited movement" of his hands and legs." Unlike in May 2018 when Mosley and Pierre had not yet been disciplined, Plaintiff was not re-reasonably accommodated with reassignment to a desk job to do filing for which he was qualified. Rather, the School District through its employees perform a subjective December 19, 2018 dexterity test of Plaintiff, withhold the dexterity test findings from Plaintiff's physicians so they cannot complete their evaluation of his bus driving abilities, fail to send Plaintiff for a promised DOT Medical

Evaluation by the School District's physicians and fired Plaintiff on January 8, 2019 without warning, effective immediately.

165.  As a direct and proximate result of the School District's willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress, medical expense, loss of earnings, loss of ability to earn money in the future, loss of the capacity to enjoy life, loss of employment benefits, back pay, front pay and aggravation of a pre-existing condition. The foregoing losses occurred in the past, will occur in the future and are permanent.

166. As a further direct and proximate result of the School District's violation of the Title VII and discrimination as heretofore described, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore will seek leave of Court, if necessary, to amend this Complaint in that regard when the same shall be fully and finally ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to the Title VII and Federal law.

WHEREFORE, Plaintiff demands in his favor against the School District for compensatory damages including back pay, front pay (or reinstatement), economic and non-economic damages, punitive damages, pre- and post judgment interest, attorneys' fees, costs, trial by jury on all issue so triable as of right by a jury and such other relief as this Court deems proper.

### Count VII against the School District
### Retaliation under Chapter 760, Florida Statutes in the alternative to Counts II-V

167. Plaintiff sues the School District for retaliation under Chapter 760, Florida Statutes, adopts and realleges paragraphs 1-14 and 130-152 as if fully alleged herein and further states:

168.  This action for retaliation is brought pursuant Chapter 760, Florida Statutes.

169. At all times material hereto, Plaintiff was engaged in a protected activity under Chapter 760, Florida Statutes, when he made complaints to the School District against Pierre for workplace sexual harassment and for workplace retaliation by Mosley and Pierre for making the sexual harassment complaint against Pierre.

170. At all times hereto, Plaintiff's aforesaid complaints against Pierre and Mosley were substantiated as the School District disciplined Mosley and Pierre for the protected activity complained of by Plaintiff and removed them from the Royal Palm compound where Plaintiff worked so that they would not be his supervisors.

171. Despite Plaintiff's aforesaid protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff on or about November 12, 2018 by returning Mosley to the Royal Palm compound where Plaintiff worked to be Plaintiff's supervisor.

172. Mosley's return to the Royal Palm compound was temporally proximate to cause and did cause the rest of the School District's intentionally discriminatory misconduct in violation of Chapter 760, Florida Statutes. Despite Plaintiff's aforesaid protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff by and through Mosley who removed Plaintiff from bus driving duties and assigned him to report to work every day to do nothing which is an adverse employment action.

173. Despite Plaintiff's aforesaid protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff on or about December 3, 2018 through pre-textual requirements for Plaintiff to (a) undergo a dexterity test conducted by School District employees that Plaintiff was pre-destined to fail; (b) undergo job-qualifying medical examinations by Plaintiff's own physicians whom the School District knew or should have known were not qualified to fill out the DOT medical forms furnished by the School District; (c) the School District

withholding the dexterity test results from Plaintiff's physicians so that they could complete their job-qualifying examinations of Plaintiff; and (d) promising but not sending Plaintiff to a promised DOT Medical Exam by the District's physician before firing Plaintiff.

174. Despite Plaintiff's aforesaid protected activity, Plaintiff suffered an adverse employment action and intentional discriminatory retaliation on January 8, 2019 when the School District fired Plaintiff, effective immediately, (a) without warning; (b) after Mosley and Pierre were disciplined due to Plaintiff's complaint; (c) without sending the dexterity test results to Plaintiff's doctors to complete their evaluations of his driving ability; (d) without sending Plaintiff to a promised a DOT Medical Exam by the District's physician; and (e) without reasonably accommodating Plaintiff with a desk job doing filing as the School District did in May 2018.

175. At all times material hereto, Plaintiff was qualified to perform a desk job doing filing.

176. At all times material hereto, the School District reasonably accommodated qualified similarly-situated persons Liinda Brown and Shirlley Cedric, including Plaintiff in May 2018), considered by the District disabled by illness or injury through re-assignment rather than through termination.

177. At all times material hereto, there was a causal connection and temporal proximity between the protected activity of Plaintiff substantiated complaints about Pierre's workplace sexual harassment, Pierre/Mosley's workplace retaliation and the resultant retaliation that led to Plaintiff's termination, to wit:

     a. Mosley and Pierre were disciplined in mid-October 2018.

     b. The School District returned Mosley to the Royal Palm compound to be Plaintiff's supervisor in mid-November 2018.

c. Plaintiff's reassignment to another compound was rescinded by the School District and Plaintiff was forced to remain at the Royal Palm compounded under Mosley who immediately removed Plaintiff from bus driving and assigned him to do nothing.

d. On December 3, 2018, the School District observes Plaintiff, who is doing nothing at the Royal Palm compound, to have "limited movement" of his hands and legs." Unlike in May 2018 when Mosley and Pierre had not yet been disciplined, Plaintiff was not re-reasonably accommodated with reassignment to a desk job to do filing for which he is qualified. Rather, the School District through its employees perform a subjective December 19, 2018 dexterity test of Plaintiff, withhold the dexterity test findings from Plaintiff's physicians so they cannot complete their evaluation of his bus driving abilities, fail to send Plaintiff for a promised DOT Medical Evaluation by the School District's physicians and fired Plaintiff on January 8, 2019 without warning, effective immediately.

178. As a direct and proximate result of the School District's willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress, medical expense, loss of earnings, loss of ability to earn money in the future, loss of the capacity to enjoy life, loss of employment benefits, back pay, front pay and aggravation of a pre-existing condition. The foregoing losses occurred in the past, will occur in the future and are permanent.

179. As a further direct and proximate result of the School District's violation of the Chapter 760, Florida Statutes, and discrimination as heretofore described, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore will seek leave of Court, if necessary, to amend this Complaint in that regard when

the same shall be fully and finally ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to the Chapter 760, Florida Statutes.

WHEREFORE, Plaintiff demands in his favor against the School District for compensatory damages including back pay, front pay (or reinstatement), economic and non-economic damages, punitive damages, pre- and post judgment interest, attorneys' fees, costs, trial by jury on all issue so triable as of right by a jury and such other relief as this Court deems proper.

### Count VIII against the School Board
### Retaliation under Title VII in the alternative to Counts II-V

180. Plaintiff sues the School Board for retaliation under Title VII, adopts and realleges paragraphs 1-14 and 130-152 as if fully alleged herein and further states:

181. This action for retaliation is brought pursuant to Title VII, Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e–3(a).

182. At all times material hereto, the factual allegations in paragraphs 118-140 are incorporated, adopted and re-alleged as set forth herein because they are relevant and material to this count.

183. At all times material hereto, Plaintiff was engaged in a protected activity under Title VII when he made complaints to the School District against Pierre for workplace sexual harassment and for workplace retaliation by Mosley and Pierre for making the sexual harassment complaint against Pierre.

184. At all times hereto, Plaintiff's aforesaid complaints against Pierre and Mosley were substantiated as the School District disciplined Mosley and Pierre for the protected activity complained of by Plaintiff and removed them from the Royal Palm compound where Plaintiff worked so that they would not be his supervisors.

36

185. Despite Plaintiff's aforesaid protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff on or about November 12, 2018 by returning Mosley to the Royal Palm compound where Plaintiff worked to be Plaintiff's supervisor.

186. Mosley's return to the Royal Palm compound was temporally proximate to cause and did cause the rest of the School District's intentionally discriminatory misconduct in violation of Title VII. Despite Plaintiff's aforesaid protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff by and through Mosley who removed Plaintiff from bus driving duties and assigned him to report to work every day to do nothing which is an adverse employment action.

187. Despite Plaintiff's aforesaid protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff on or about December 3, 2018 through pre-textual requirements for Plaintiff to (a) undergo a dexterity test conducted by  School District employees that Plaintiff was pre-destined to fail; (b) undergo job-qualifying medical examinations by Plaintiff's own physicians whom the School District knew or should have known were not qualified to fill out the DOT medical forms furnished by the School District; (c) the School District withholding the dexterity test results from Plaintiff's physicians so that they could complete their job-qualifying examinations of Plaintiff; and (d) promising but not sending Plaintiff to a promised DOT Medical Exam by the District's physician before firing Plaintiff.

188. Despite Plaintiff's aforesaid protected activity, Plaintiff suffered an adverse employment action and intentional discriminatory retaliation on January 8, 2019 when the School District fired Plaintiff, effective immediately, (a) without warning; (b) after Mosley and Pierre were disciplined due to Plaintiff's complaint; (c) without sending the dexterity test results to Plaintiff's doctors to complete their evaluations of his driving ability; (d) without sending Plaintiff

to a promised a DOT Medical Exam by the District's physician; and (e) without reasonably accommodating Plaintiff with a desk job doing filing as the School District did in May 2018.

189. At all times material hereto, Plaintiff was qualified to perform a desk job doing filing.

190. At all times material hereto, the School District reasonably accommodated qualified similarly-situated persons Linda Brown and Shirley Cedric, including Plaintiff in May 2018, considered by the District disabled by illness through re-assignment to another job rather than through termination.

191. At all times material hereto, there was a causal connection and temporal proximity between the protected activity of Plaintiff substantiated complaints about Pierre's workplace sexual harassment, Pierre/Mosley's workplace retaliation and the resultant retaliation that caused Plaintiff's termination, to wit:

a. Mosley and Pierre were disciplined in mid-October 2018.

b. The School District returned Mosley to the Royal Palm compound to be Plaintiff's supervisor in mid-November 2018.

c. Plaintiff's reassignment to another compound was rescinded by the School District and Plaintiff was forced to remain at the Royal Palm compounded under Mosley who immediately removed Plaintiff from bus driving and assigned him to do nothing.

d. On December 3, 2018, the School District observes Plaintiff, who is doing nothing at the Royal Palm compound, to have "limited movement" of his hands and legs." Unlike in May 2018 when Mosley and Pierre had not yet been disciplined, Plaintiff was not re-reasonably accommodated with reassignment to a desk job to do filing for which he was qualified. Rather, the School District through its employees perform a subjective December 19, 2018 dexterity test of Plaintiff, withhold the dexterity test findings from Plaintiff's physicians so they cannot complete

their evaluation of his bus driving abilities, fail to send Plaintiff for a promised DOT Medical Evaluation by the School District's physicians and fired Plaintiff on January 8, 2019 without warning, effective immediately.

192. On or about January 23, 2019, the School District submitted Plaintiff's termination and its circumstances to the School Board which accepted Plaintiff's termination without offering Plaintiff a reasonable accommodation or directing the School District to offer Plaintiff a reasonable accommodation. Accordingly, at all times material hereto, the School Board was and is directly and vicariously liable for Plaintiff's wrongful termination without reasonable accommodation.

193. Plaintiff's termination from employment by the School District and School Board without reasonable accommodation was an adverse employment action caused by the School Board intentionally discriminating against Plaintiff through retaliation for protected activity.

194. As a direct and proximate result of the School Board's willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress, medical expense, loss of earnings, loss of ability to earn money in the future, loss of the capacity to enjoy life, loss of employment benefits, back pay, front pay and aggravation of a pre-existing condition. The foregoing losses occurred in the past, will occur in the future and are permanent.

195. As a further direct and proximate result of the School Board's violation of the Title VII and discrimination as heretofore described, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore will seek leave of Court, if necessary, to amend this Complaint in that regard when the same shall be fully

and finally ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to the Title VII and Federal law.

WHEREFORE, Plaintiff demands in his favor against the School Board for compensatory damages including back pay, front pay (or reinstatement), economic and non-economic damages, punitive damages, pre- and post judgment interest, attorneys' fees, costs, trial by jury on all issue so triable as of right by a jury and such other relief as this Court deems proper.

### Count IX against the School Board
### Retaliation under Chapter 760, Florida Statutes in the alternative to Counts II-V

196. Plaintiff sues the School Board for retaliation under Chapter 760, Florida Statutes, adopts and realleges paragraphs 1-14 and 130-152 as if fully alleged herein and further states:

197. This action for retaliation is brought pursuant Chapter 760, Florida Statutes.

198. At all times material hereto, Plaintiff was engaged in a protected activity under Chapter 760, Florida Statutes, when he made complaints to the School District against Pierre for workplace sexual harassment and for workplace retaliation by Mosley and Pierre for making the sexual harassment complaint against Pierre.

199. At all times hereto, Plaintiff's aforesaid complaints against Pierre and Mosley were substantiated as the School District disciplined Mosley and Pierre for the protected activity complained of by Plaintiff and removed them from the Royal Palm compound where Plaintiff worked so that they would not be his supervisors.

200. Despite Plaintiff's aforesaid protected activity, the School District and School Board intentionally and discriminatorily retaliated against Plaintiff on or about November 12, 2018 by returning Mosley to the Royal Palm compound where Plaintiff worked to be Plaintiff's supervisor.

201. Mosley's return to the Royal Palm compound was temporally proximate to cause and did cause the rest of the School Board's intentionally discriminatory misconduct in violation of

Chapter 760, Florida Statutes. Despite Plaintiff's aforesaid protected activity, the School District intentionally and discriminatorily retaliated against Plaintiff by and through Mosley who removed Plaintiff from bus driving duties and assigned him to report to work every day to do nothing which is an adverse employment action.

202. Despite Plaintiff's aforesaid protected activity, the School District and School Board intentionally and discriminatorily retaliated against Plaintiff on or about December 3, 2018 through pre-textual requirements for Plaintiff to (a) undergo a dexterity test conducted by  School District employees that Plaintiff was pre-destined to fail; (b) undergo job-qualifying medical examinations by Plaintiff's own physicians whom the School District knew or should have known were not qualified to fill out the DOT medical forms furnished by the School District; (c) the School District withholding the dexterity test results from Plaintiff's physicians so that they could complete their job-qualifying examinations of Plaintiff; and (d) promising but not sending Plaintiff to a promised DOT Medical Exam by the District's physician before firing Plaintiff.

203. Despite Plaintiff's aforesaid protected activity, Plaintiff suffered an adverse employment action and intentional discriminatory retaliation on January 8, 2019 when the School District and School Board fired Plaintiff, effective immediately, (a) without warning; (b) after Mosley and Pierre were disciplined due to Plaintiff's complaint; (c) without sending the dexterity test results to Plaintiff's doctors to complete their evaluations of his driving ability; (d) without sending Plaintiff to a promised a DOT Medical Exam by the District's physician; and (e) without reasonably accommodating Plaintiff with a desk job doing filing as the School District did in May 2018.

204. At all times material hereto, Plaintiff was qualified to perform a desk job doing filing.

205. At all times material hereto, the School District reasonably accommodated qualified similarly-situated persons Linda Brown and Shirley Cedric, including Plaintiff in May 2018, considered by the District disabled by illness or injury through re-assignment rather than through termination.

206. At all times material hereto, there was a causal connection and temporal proximity between the protected activity of Plaintiff substantiated complaints about Pierre's workplace sexual harassment, Pierre/Mosley's workplace retaliation and the resultant retaliation that led to Plaintiff's termination, to wit:

a. Mosley and Pierre were disciplined in mid-October 2018.

b. The School District returned Mosley to the Royal Palm compound to be Plaintiff's supervisor in mid-November 2018.

c. Plaintiff's reassignment to another compound was rescinded by the School District and Plaintiff was forced to remain at the Royal Palm compounded under Mosley who immediately removed Plaintiff from bus driving and assigned him to do nothing.

d. On December 3, 2018, the School District observed Plaintiff, who is doing nothing at the Royal Palm compound, to have "limited movement" of his hands and legs." Unlike the May 2018 when Mosley and Pierre had not yet been disciplined, Plaintiff was not re-reasonably accommodated with reassignment to a desk job to do filing for which he is qualified. Rather, the School District through its employees perform a subjective December 19, 2018 dexterity test of Plaintiff, withhold the dexterity test findings from Plaintiff's physicians so they cannot complete their evaluation of his bus driving abilities, fail to send Plaintiff for a promised DOT Medical Evaluation by the School District's physicians and fired Plaintiff on January 8, 2019 without warning, effective immediately.

207. On or about January 23, 2019, the School District submitted Plaintiff's termination and its circumstances to the School Board which accepted Plaintiff's termination without offering Plaintiff a reasonable accommodation or directing the School District to offer Plaintiff a reasonable accommodation. Accordingly, at all times material hereto, the School Board was and is directly and vicariously liable for Plaintiff's wrongful termination without reasonable accommodation.

208. Plaintiff's termination from employment by the School District and School Board without reasonable accommodation was an adverse employment action caused by School Board intentionally discriminating against Plaintiff through retaliation for protected activity.

209. As a direct and proximate result of the School Board's willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress, medical expense, loss of earnings, loss of ability to earn money in the future, loss of the capacity to enjoy life, loss of employment benefits, back pay, front pay and aggravation of a pre-existing condition. The foregoing losses occurred in the past, will occur in the future and are permanent.

210. As a further direct and proximate result of the School Board's violation of the Chapter 760, Florida Statutes, and discrimination as heretofore described, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore will seek leave of Court, if necessary, to amend this Complaint in that regard when the same shall be fully and finally ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to the Chapter 760, Florida Statutes.

WHEREFORE, Plaintiff demands in his favor against the School Board for compensatory damages including back pay, front pay (or reinstatement), economic and non-

economic damages, punitive damages, pre- and post judgment interest, attorneys' fees, costs, trial by jury on all issue so triable as of right by a jury and such other relief as this Court deems proper.

## D COUNT FOR WORKER'S COMPENSATION RETALIATION

### Count X against the School District
### Retaliation under Fla. Stat. § 440.205

211. Plaintiff sues the School District, adopts and realleges paragraphs 1-14 as if fully alleged herein and further states:

212. At all times material hereto, Plaintiff maliciously was fired by the School District on January 8, 2019, an adverse employment action, for making a statutorily-protected worker's compensation claim in October 2018 which is prohibited conduct by an employer in violation of Fla. Stat. § 440.205.

213. At all times material hereto, there is a causal connection between the School District firing Plaintiff and his worker's compensation claim because the School District knew about Plaintiff's worker's compensation claim when it fired him.

214. At all times material hereto, the School District maliciously fired Plaintiff for making a workers compensation claim against the School District to coerce and intimidate Plaintiff which is prohibited conduct in violation of Fla. Stat. § 440.205.

215. As a direct and proximate result of the aforesaid acts and omissions by the School District in violation of Fla. Stat. § 440.205, Plaintiff sustained bodily injury and resulting pain and suffering, disability, discomfort, inconvenience, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, impairment of litigation, credibility and proceeds, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

216. Plaintiff has incurred attorney's fees and costs in association with this Count and is entitled to attorney's fees and cost recovery under Chapter 440, Florida Statutes.

WHEREFORE, Plaintiff demands judgment against the School District for compensatory, special and consequential damages; attorney's fees; costs; prejudgment interest and a trial by jury for all issues so triable as of right by a jury.

DATED October 31, 2019                    HENRY A SEIDEN, ESQ. (FBN 436763)
                                          SEIDEN LAW
                                          Attorneys for Plaintiff
                                          6274 Linton Blvd., Suite 103
                                          Delray Beach, FL 33484
                                          Phone: 561-833-8988
                                          Email address: service @seidenlawfirm.com

                                          By:  __/s/ Henry A. Seiden_____
                                              HENRY A. SEIDEN, ESQ.